United States District Court
Southern District of Texas
FILED

APR 0 9 2019

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

UNTED STATES OF AMERICA          §
                                 §
v.                               §
                                 §
RICARDO QUINTANILLA              §          CRIMINAL NO. M-19-0522-S1
also known as "Richard"          §
▓▓▓▓▓▓▓▓▓▓▓                      §
                                 §
ARTURO C. CUELLAR, JR.           §
also known as "AC"               §
                                 §
▓▓▓▓▓▓▓▓▓▓▓                      §
                                 §

## SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

## COUNT ONE
## 18 U.S.C. § 1349
### (Conspiracy to Commit Honest Services Wire Fraud)

At all times relevant to this Indictment, with dates, times, and amounts being approximates:

## RELEVANT INDIVIDUALS AND ENTITIES

1.      Defendant **RICARDO QUINTANILLA (QUINTANILLA)** aka "Richard" is a businessman who lived and worked in Weslaco, Texas.

2.      Defendant **ARTURO C. CUELLAR, JR.** aka. "A.C.," is a resident of Progreso Lakes, Texas, who served as a commissioner of Hidalgo County, Texas, from March 2010 to November 2010 and approximately January 2013 to December 2016.

3.      Defendant **JOHN F. CUELLAR** is an attorney based in Weslaco, Texas, who served as a Weslaco City Commissioner from May 1995 to November 2014. For large parts of his tenure on the Weslaco City Commission (the "commission"), including from at least June 2007 to May 2009 and from May 2010 to November 2014, **JOHN F. CUELLAR** was selected by the

commission to serve as mayor pro tem. As a commissioner, **JOHN F. CUELLAR** was an agent of the City of Weslaco.

5. Leonel "Leo" LOPEZ (LOPEZ) is a resident of Starr County, Texas.

6. Gerardo "Jerry" TAFOLLA (TAFOLLA) is a resident of Weslaco, Texas and an elected member of the commission.

7. Company A was an international engineering and construction company that performed large-scale infrastructure projects for public and private clients. Person A was an employee of Company A.

8. Company B was an engineering company based in San Antonio, Texas. Person B was the owner of Company B.

9. Company C was an engineering company based in McAllen, Texas. Person C was the owner of Company C

10. Company D was a business entity owned, in part, by **ARTURO C. CUELLAR, JR.** and based in Corpus Christi, Texas.

### GENERAL ALLEGATIONS

### The Weslaco City Commission

12. The Texas Constitution, the laws of the State of Texas, and the charter of the City of Weslaco established ethical standards of conduct for elected public officials, including Weslaco City Commissioners. These standards included an oath to faithfully execute the duties of the office of commissioner and to preserve, protect, and defend the Constitution and the laws of the United

2

States and the State of Texas.  Accordingly, commissioners owed a fiduciary duty to the City of Weslaco, the commission, and the people of the City of Weslaco.

13.     As officials in the city government, defendant **JOHN F. CUELLAR** and TAFOLLA each owed a fiduciary duty to the City of Weslaco and to its citizens to perform the duties and responsibilities of their office free from corrupt influence.  As elected officials in the State of Texas, **JOHN F. CUELLAR** and TAFOLLA swore to uphold the United States Constitution, the Texas Constitution, and the laws of the State of Texas and to faithfully execute the duties of their office.

14.     The commission was authorized to take official action only when a quorum—a majority of duly elected commissioners was present.  When a quorum was present, the commission could act based on a majority vote.

15.     Pursuant to the Texas Open Meetings Act, Tex. Gov't Code Ann. § 551, *et seq.*, the commission, as a city government in Texas, was authorized to conduct official business only after providing at least 72 hours of public notice of the time, place, and subject matter of the meeting. Such meetings were generally required to be open to the public, with closed meetings and executive sessions permitted only under narrowly drawn exceptions.

16.     Prior to May 2008, the commission was comprised of a mayor, a mayor pro tem, and three commissioners elected at large.   The mayor pro tem was a commissioner selected by a majority vote of the commissioners to assume the mayor's duties when the mayor was absent.

17.     Starting in or about May 2008, the commission was comprised of six commissioners elected from single-member districts, a mayor elected at large, and a mayor pro tem, selected in the same manner as prior to May 2008.

3



### The Weslaco Water Treatment Facilities

19.     In or about 2004, the Texas Commission on Environmental Quality ("TCEQ") notified the City of Weslaco that its water treatment facilities were in violation of Texas environmental regulations.  The city's water treatment facilities included the Water Treatment Plant (WTP), which processed the city's potable water, and the North Wastewater Treatment Plant (NWWTP) and South Wastewater Treatment Plant (SWWTP), which together processed the city's wastewater.

20.     In or about 2007, the commission voted to issue approximately $28 million in municipal bonds to finance several infrastructure projects in the Weslaco area.  The two largest and costliest projects to be paid for by the bond funds were to rebuild the NWWTP and to perform repairs to the WTP.

21.     In or about 2008, the commission hired Company A to act as the construction manager for the infrastructure projects to be funded by the bond issuance.  Under the contract, Company A would effectively select the companies to perform the infrastructure work to be paid for with the bond funds.

22.     In or about March 18, 2008, Company A granted to itself, subject to the approval of the commission, the contracts to rehabilitate the NWWTP and WTP, the two costliest projects to be completed using the $28 million in municipal bond proceeds.

## THE CONSPIRACY

January 1, 2011

23.    From in or about ████████ through in or about December 2016, in the Southern

District of Texas and elsewhere, the defendants,

**RICARDO QUINTANILLA,**
**also known as "Richard,"**
████████

**ARTURO C. CUELLAR, JR.,**
**also known as "A.C.,"**
████████

LOPEZ, and TAFOLLA, did knowingly combine, conspire, confederate, and agree together and

with others known and unknown to the Grand Jury, to devise and intend to devise a scheme and

artifice to defraud and to deprive, by means of material false and fraudulent pretenses,

representations, and promises, and to transmit and cause to be transmitted by means of wire

communication in interstate commerce, any writings, signs, signals, pictures, and sounds for the

purpose of executing the scheme and artifice to defraud and deprive, that is, to deprive the City of

Weslaco, the Weslaco City Commission, and the citizens of Weslaco of their right to the honest

services of **JOHN F. CUELLAR** and TAFOLLA through bribery, in violation of 18 U.S.C. §§

1343 and 1346.

## THE SCHEME TO DEFRAUD

January 1, 2011

24.    From in or about ████████ through in or about December 2016, in the Southern

District of Texas and elsewhere, the defendants, **QUINTANILLA, JOHN F. CUELLAR,**

**ARTURO C. CUELLAR, JR.,** ████████, LOPEZ, and TAFOLLA, and others known and

unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud and

to deprive the City of Weslaco, the Weslaco City Commission, and the citizens of Weslaco of their

intangible right to the honest services of **JOHN F. CUELLAR** and TAFOLLA, both elected

officials, through bribery.

5

## PURPOSE OF THE CONSPIRACY

25.     The purposes of the conspiracy included, but were not limited to, the following:

a.      · For **JOHN F. CUELLAR** to enrich himself by accepting bribes in exchange for using his official position as a Weslaco City Commissioner to take official acts to benefit and help Company A, Company B, and Company C obtain millions of dollars in contracts from the City of Weslaco;

b.      For TAFOLLA to enrich himself by accepting bribes in exchange for using his official position as a Weslaco City Commissioner to take official acts to benefit and help Company A, Company B, and Company C obtain millions of dollars in contracts from the City of Weslaco;

c.      For **ARTURO C. CUELLAR, JR**. to enrich himself by keeping a portion of the bribe funds paid to him by LOPEZ and then pay the remainder of the bribe funds to **JOHN F. CUELLAR**;

d.      For **QUINTANILLA** to enrich himself by keeping a portion of the bribe funds paid to him by LOPEZ and then pay the remainder of the bribe funds to TAFOLLA;

e.      For LOPEZ to enrich himself by keeping a portion of the bribe funds paid by Company B and Company C; █████

█  ████████████████████████

████████████████████████

████████████████████

## MANNER AND MEANS OF THE CONSPIRACY

26.     The manner and means by which the defendants carried out the conspiracy included, but were not limited to, the following:

6

a.     LOPEZ accepted at least approximately $4.1 million, paid through Company B and Company C, in order to pay bribes to **JOHN F. CUELLAR** and TAFOLLA, through **ARTURO C. CUELLAR, JR.** and **QUINTANILLA**, respectively.

b.     **ARTURO C. CUELLAR, JR., QUINTANILLA,** and LOPEZ corruptly gave, offered, and promised things of value to **JOHN F. CUELLAR** and TAFOLLA, including hundreds of thousands of dollars in cash, in exchange for specific official action favorable to Company A, Company B, and Company C, including votes authorizing multi-million dollar contracts for water treatment facilities in the City of Weslaco.

c.     **JOHN F. CUELLAR, ARTURO C. CUELLAR, JR., QUINTANILLA,** LOPEZ and TAFOLLA, and other co-conspirators met at various locations in the Southern District of Texas and elsewhere, to discuss the official action that **JOHN F. CUELLAR** and TAFOLLA should take to benefit Company A, Company B, and Company C, and to discuss the payment of bribes.

d.     In order to conceal the scheme, **JOHN F. CUELLAR, ARTURO C. CUELLAR, JR., QUINTANILLA,** LOPEZ, and TAFOLLA, took steps to anonymously funnel the bribe payments to **JOHN F. CUELLAR** and TAFOLLA in a manner to avoid detection that the payments came from Company B and Company C, including the following:

i.     LOPEZ received payments from Company B and Company C, as well as payments from Company A that were passed through Company B and Company C, for the purpose of paying bribes to **JOHN F. CUELLAR** and TAFOLLA, disguised as consulting fees due to LOPEZ.

ii.       From in or about March 26, 2008 to in or about November 24, 2014, LOPEZ wrote a total of approximately $1,398,000 in checks to **ARTURO C. CUELLAR, JR.** drawn on LOPEZ's accounts at Lone Star National Bank.

iii.       From on or about April 21, 2011 to on or about November 6, 2014 **ARTURO C. CUELLAR, JR.** directed employees of Company D to make a total of approximately $405,000 in payments to **JOHN F. CUELLAR** from Company D, disguised as payments for legitimate legal services.

v.       From on or about September 2011 to on or about October 2014, LOPEZ wrote a total of approximately $85,950 in checks to **QUINTANILLA** drawn on LOPEZ's accounts at Lone Star National Bank.

vi.       **QUINTANILLA** converted the checks from LOPEZ to cash at Lone Star National Bank and shared approximately half of the cash with TAFOLLA.

e.       **JOHN F. CUELLAR** and TAFOLLA cast votes, at the direction of LOPEZ, **ARTURO C. CUELLAR, JR.**, **QUINTANILLA**, and their co-conspirators, to award contracts and payments to Company A, Company B, and Company C, or to benefit Company A, Company B, and Company C in the execution and administration of their contracts with the city.



     h.     **JOHN F. CUELLAR, ARTURO C. CUELLAR, JR., QUINTANILLA,**

**LOPEZ** and **TAFOLLA,** and their co-conspirators used wire communications in interstate

commerce, such as mobile messaging applications, email, and interstate bank transfers, in

furtherance of the scheme to defraud.

<u>**OVERT ACTS**</u>

    27.    In furtherance of the conspiracy and in order to accomplish its objects, **JOHN F.**

**CUELLAR, ARTURO C. CUELLAR, JR., QUINTANILLA,** LOPEZ and **TAFOLLA** and their

co-conspirators committed the following overt acts, among others, in the Southern District of

Texas and elsewhere:

    28.    ████████████████████████████████████

████████████████████████████████████████

████████████████████████  LOPEZ agreed with

**ARTURO C. CUELLAR, JR.** and **JOHN F. CUELLAR** that **JOHN F. CUELLAR** would take

official action as a Weslaco City Commissioner to benefit Company A and Company B, such as

by voting to grant them contracts with the city, in exchange for bribe payments

9

29.     In or about 2011, LOPEZ, with the knowledge ███████████████ **ARTURO C. CUELLAR, JR.**, obtained the agreement of **QUINTANILLA**, to obtain the agreement of another commissioner to accept bribes in exchange for the agreement to take official action as a Weslaco City Commissioner to benefit Company A and Company B, such as by voting to grant them contracts with the city. **QUINTANILLA** obtained the agreement of **TAFOLLA** to take official action as a Weslaco City Commissioner to benefit Company A and Company B, such as by voting to grant them contracts with the city in exchange for bribe payments paid from LOPEZ through **QUINTANILLA.**

30.     ████████████████████████████

████████████████████████████████████████

████████████████████ **JOHN F. CUELLAR** and **TAFOLLA** agreed, through LOPEZ, **ARTURO C. CUELLAR, JR.**, and **QUINTANILLA**, to take official action as a Weslaco City Commissioner to benefit Company C, such as by voting to grant it contracts with the city, in exchange for bribe payments.

### The Water Treatment Facilities





### The WTP

37.     On or about January 18, 2011, **JOHN F. CUELLAR** voted to authorize the city manager and the city attorney to negotiate a new professional services agreement with Company A to prepare a preliminary engineering report on the WTP.

38.     On or about August 16, 2011,

    a.     **JOHN F. CUELLAR** made a motion before the commission to approve the preliminary engineering report on the WTP prepared by Company A;

    b.     **JOHN F. CUELLAR** and TAFOLLA voted to approve the preliminary engineering report on the WTP prepared by Company A; and

    c.     **JOHN F. CUELLAR** and TAFOLLA voted to declare that the WTP was exceeding capacity and failing to meet public water demand, thereby creating an imminent threat to public health and safety.   This declaration allowed the commission to directly grant construction contracts to address violations issued by TCEQ, bypassing ordinary bidding and qualification procedures.

39.     On or about September 8, 2011, **JOHN F. CUELLAR** and TAFOLLA took the following actions:

    a.     voted to authorize the city manager to negotiate a preconstruction services contract with Company A for the WTP; and

    b.     voted in favor of a motion for the city manager to negotiate a contract with Company B for the design of an expansion to the WTP and associated projects.

Due to the declaration from the August 16, 2011 meeting that the WTP represented an imminent threat to public health and safety, the commission was able to grant these contracts without the ordinary competitive bidding and qualification process.

40.      On or about October 6, 2011, TAFOLLA voted to approve a professional services agreement with Company B for the design of the WTP and a professional services agreement with Company A for the pre-construction services for the WTP.

41.      On or about March 27, 2012, **JOHN F. CUELLAR** and TAFOLLA voted to authorize the mayor to execute a contract, valued at approximately $38.5 million, with Company A for the expansion of the WTP and to authorize city staff to amend the city budget to accommodate the $38.5 million contract with Company A.

42.      On or about June 5, 2012, **JOHN F. CUELLAR** and TAFOLLA voted to approve the City of Weslaco's entering into a professional services agreement with Company C.

44.      On or about September 20, 2012, **JOHN F. CUELLAR** and TAFOLLA voted to approve an amendment to the contract with Company B to include automation and daily construction inspection in an amount not to exceed $2,978,950, to authorize a budget amendment as appropriate, and to authorize the mayor to execute any related documents.

### The SWWTP

46.     On or about July 16, 2013, **JOHN F. CUELLAR** and TAFOLLA voted to amend the city's contract with Company B to authorize Company B to prepare a preliminary engineering report for repairs to the SWWTP.

47.     On or about September 2, 2014, **JOHN F. CUELLAR** and TAFOLLA voted to approve the final preliminary engineering report for the SWWTP, prepared by Company B, and authorize a budget amendment to pay Company B for the report.

48.     **JOHN F. CUELLAR** and TAFOLLA made the motions, cast the votes, and took the other official actions referenced in paragraphs 28 through 47 in their official capacities as Weslaco City Commissioners during Weslaco City Commission meetings.

### Other Acts

49.     **JOHN F. CUELLAR, ARTURO C. CUELLAR, JR., QUINTANILLA, LOPEZ,** and **TAFOLLA,** and their co conspirators used wire communications in interstate commerce, such as mobile messaging applications, email, and interstate bank transfers, in furtherance of the scheme to defraud.

50.     In or about February 2016, LOPEZ sent to **QUINTANILLA,** via electronic messages over a cellular telephone, questions that LOPEZ wanted TAFOLLA to ask in upcoming city commission meetings. These questions were crafted to benefit Company B in its attempts to recover payments for the WTP from the City of Weslaco, after the city stopped paying Company B.

## Bribe Payments

### Payments to LOPEZ

52.     In or about 2008, Company B began paying LOPEZ approximately $17,000 per month.

53.     In or about February 2011, around the time that **JOHN F. CUELLAR** voted to approve the professional services agreement with Company A to prepare a preliminary engineering report on the WTP, Company B increased the amount paid on a monthly basis to LOPEZ from approximately $17,000 to approximately $25,000 to $40,000 per month.

55.     In all, from in or about April 2008 through in or about December 2015, Person B and Company B paid over approximately $2.5 million to LOPEZ in regular payments of approximately $1,000 to approximately $75,000.

56.     On or about April 2012, shortly after **JOHN F. CUELLAR** and TAFOLLA voted to authorize the mayor to execute the $38.5 million contract with Company A, Person C made a payment of approximately $85,000 to LOPEZ. From that point forward, Person C made payments ranging from approximately $75,000 to approximately $150,000 to LOPEZ at various periods throughout the year, until approximately July 2014.

57.     From in or about April 2012 through in or about July 2014, Company C paid over approximately $1.6 million to LOPEZ.

### Payments to ARTURO C. CUELLAR, JR.

58.    LOPEZ shared the money he received from Company B and Company C with **ARTURO C. CUELLAR, JR.** through monthly payments of approximately $5,000 to **ARTURO C. CUELLAR, JR.**, beginning at least by on or about March 26, 2008, so that **ARTURO C. CUELLAR, JR.** could pay bribes to **JOHN F. CUELLAR.**

59.    In or about May 2011, LOPEZ's monthly payments to **ARTURO C. CUELLAR, JR.** increased, ranging from approximately $10,000 to more than $60,000 approximately monthly.

60.    Through these monthly payments, from in or about March 2008 through in or about November 2014, LOPEZ paid approximately $1,398,000 to **ARTURO C. CUELLAR, JR.**

### Payments to JOHN F. CUELLAR

61.    In or about April 2011, **ARTURO C. CUELLAR, JR.** directed employees of Company D to begin making semi-monthly payments of approximately $5,000 to $7,500 to **JOHN F. CUELLAR**, despite the fact that **JOHN F. CUELLAR** was not providing services to Company D. Company D's employees complied.

62.    From in or about April 2011 through in or about November 2014, **ARTURO C. CUELLAR, JR.** paid approximately $405,000 to **JOHN F. CUELLAR** through Company D in semi-monthly payments ranging from approximately $5,000 to approximately $7,500, disguised as payments for legal services that were never rendered, so that **JOHN F. CUELLAR** would take official actions to benefit Company A, Company B, and Company C

63.    The payments from LOPEZ to **ARTURO C. CUELLAR, JR.** and the payments from Company D to **JOHN F. CUELLAR** stopped promptly in November 2014 upon **JOHN F. CUELLAR**'s loss of his re-election bid for the commission.

16





<u>Payments to TAFOLLA</u>

78.     In or about 2011, LOPEZ began writing checks to QUINTANILLA approximately once per month, in amounts ranging from approximately $500 to approximately $3,500. QUINTANILLA cashed these checks and provided approximately half of the cash to TAFOLLA.

79.     From on or about September 15, 2011 to in or about October 22, 2014, LOPEZ wrote approximately 41 checks drawn on Lone Star National Bank Acct. Nos. ****9303, ****5069, and ****9214 to QUINTANILLA, in the amount of approximately $500 to approximately $5,000 each, for a total of $85,950, so that QUINTANILLA could make bribe payments to TAFOLLA.  QUINTANILLA converted these checks to cash at a Lone Star National Bank branch.

All in violation of Title 18, United States Code, Sections 1343, 1346, and 1349.

**COUNTS** ████ Two, and Five to Seven
**18 U.S.C. §§ 1343, 1346**
**(Honest Services Wire Fraud)**

80.     Paragraphs 1-79 are incorporated by reference as though fully set forth herein.

81.     From in or about ████ January 1, 2011 and continuing through in or about December 2016, in the Southern District of Texas and elsewhere, the defendants,

**RICARDO QUINTANILLA,**
**also known as "Richard"**

████████████

**ARTURO C. CUELLAR, JR.,**
**also known as "A.C.,"**

████████████

LOPEZ and TAFOLLA, and others known and unknown to the grand jury, devised and intended to devise a scheme and artifice to defraud the City of Weslaco, the Weslaco City Commission, and the citizens of Weslaco of their intangible right to the honest services of **JOHN F. CUELLAR** and TAFOLLA through bribery; to wit, on or about the dates set forth below, in the Southern

District of Texas and elsewhere, the defendants, for the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the following writings, signs, signals, pictures and sounds:

| COUNT | DATE | NATURE OF WIRE |
|-------|------|----------------|
| 2 | April 25, 2014 | Email from Person B to an employee of the City of Weslaco regarding amendments to the WTP. |
| ■ | ████ | ████████████████████████████ |
| ■ | ████ | ████████████████████████████ |
| 5 | September 2, 2015 | Email from employee of Company B to an employee of the City of Weslaco and Person B submitting a monthly status report on the WTP. |
| 6 | October 5, 2015 | Email from employee of Company B to an employee of the City of Weslaco and Person B submitting a monthly status report on the WTP. |
| 7 | December 21, 2015 | Email from employee of Company B to an employee of the City of Weslaco and Person B submitting invoices for work conducted on the WTP. |

All in violation of Title 18 United States Code, Sections 1343, 1346, and 2.

## COUNT EIGHT
### 18 U.S.C. § 666(a)(2)
### (Federal Program Bribery)

82.    Paragraphs 1-79 of this Indictment are re-alleged as if fully set forth herein.

October 1, 2013                          September 30, 2014

83.    From in or about ████████, up to and including in or about ████████, in the Southern District of Texas and elsewhere within the jurisdiction of the court, the defendant,

**RICARDO QUINTANILLA,**
**also known as "Richard"**

20

did corruptly give, offer, or agree to give a thing of value to any person intending to influence and

reward an agent of the City of Weslaco, a local government that received benefits in excess of

$10,000 pursuant to a Federal program involving a grant, contract, subsidy, loan guarantee, and

other forms of Federal assistance in 2014, in connection with any business, transaction, or series

of transactions of such State government and agency involving something of value of $5,000 or

more: namely, QUINTANILLA gave, offered, and agreed to give cash to TAFOLLA, a public

official of the City of Weslaco, intending to influence and reward TAFOLLA in connection with

the contracts for the construction and rehabilitation of the city's water treatment facilities.

All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## COUNT NINE
### 18 U.S.C. § 666(a)(2)
### (Federal Program Bribery)

84.     Paragraphs 1-79 of this Indictment are re-alleged as if fully set forth herein.

85.     From in or about ██████████, up to and including in or about ██████████, in

the Southern District of Texas and elsewhere within the jurisdiction of the court, the defendant,

### ARTURO C. CUELLAR, JR.,
### also known as "A.C."

did corruptly give, offer, or agree to give a thing of value to any person intending to influence and

reward an agent of the City of Weslaco, a local government that received benefits in excess of

$10,000 pursuant to a Federal program involving a grant, contract, subsidy, loan guarantee, and

other forms of Federal assistance in 2014, in connection with any business, transaction, or series

of transactions of such State government and agency involving something of value of $5,000 or

more: namely, **ARTURO C. CUELLAR, JR.** gave, offered, and agreed to give cash to **JOHN F.**

**CUELLAR**, a public official of the City of Weslaco, intending to influence and reward **JOHN F.**

**CUELLAR** in connection with the contracts for the construction and rehabilitation of the city's water treatment facilities.

All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.



### COUNT ELEVEN
### 18 U.S.C. § 1956(h)
### (Conspiracy to Launder Monetary Instruments)

88.     Paragraphs 1-79 of this Indictment are re-alleged as if fully set forth herein.

January 1, 2011

89.    From in or about ████████ and continuing through in or about December 2016,

in the Southern District of Texas and elsewhere, the defendants,

**RICARDO QUINTANILLA,**
**also known as "Richard"**

████████,

**ARTURO C. CUELLAR, JR.,**
**also known as "A.C.,"**

████████

LOPEZ, and TAFOLLA did knowingly combine, conspire, and agree with each other and with

other persons known and unknown to the grand jury to commit offenses against the United States

in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit: to knowingly conduct

and attempt to conduct a financial transaction which in fact involved the proceeds of specified

unlawful activity, that is, bribery of a public official, knowing that the transaction was designed in

whole or in part to promote specified unlawful activity and conceal and disguise the nature,

location, source, ownership, and control of the proceeds of specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(h).

### COUNTS TWELVE to NINETEEN
### 18 U.S.C. § 1956(a)
### (Money Laundering)

90.    Paragraphs 1-79 of this Indictment are re-alleged as if fully set forth herein.

91.    On or about the dates listed below, in the Southern District of Texas and elsewhere,

the defendant,

**RICARDO QUINTANILLA,**
**also known as "Richard"**

knowing that the property involved in the financial transactions listed below represented the

proceeds of some form of unlawful activity, that is, bribery of a public official, knowingly and

willfully conducted and caused to be conducted the financial transactions designed in whole or in

23

part to promote specified unlawful activity, that is, bribery of a public official, and conceal and

disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful

activity, with each transaction affecting interstate commerce, in that **QUINTANILLA** withdrew

funds from the bank account at the financial institutions identified below:

| Count | Date (on or about) | Financial Transaction | Total Amount of Transaction |
|-------|--------------------|-----------------------|-----------------------------|
| 12 | April 16, 2014 | Conversion of check #1703, drawn on Lone Star National Bank Acct. No. ****9303, made out to **QUINTANILLA**, to cash at Lone Star National Bank. | $2,000 |
| 13 | May 8, 2014 | Conversion of check #1590, drawn on Lone Star National Bank Acct. No. ****9303, made out to **QUINTANILLA**, to cash at Lone Star National Bank. | $2,000 |
| 14 | June 16, 2014 | Conversion of check #1544, drawn on Lone Star National Bank Acct. No. ****9303, made out to **QUINTANILLA**, to cash at Lone Star National Bank. | $2,000 |
| 15 | July 31, 2014 | Conversion of check #1631, drawn on Lone Star National Bank Acct. No. ****9303, made out to **QUINTANILLA**, to cash at Lone Star National Bank. | $2,000 |
| 16 | August 9, 2014 | Conversion of check #1636, drawn on Lone Star National Bank Acct. No. ****9303, made out to **QUINTANILLA**, to cash at Lone Star National Bank. | $5,000 |
| 17 | August 18, 2014 | Conversion of check #1642, drawn on Lone Star National Bank Acct. No. ****9303, made out to **QUINTANILLA**, to cash at Lone Star National Bank. | $2,000 |
| 18 | September 5, 2014 | Conversion of check #1634, drawn on Lone Star National Bank Acct. No. ****9303, made out to **QUINTANILLA**, to cash at Lone Star National Bank. | $5,000 |

| 19 | October 22, 2014 | Conversion of check #1739, drawn on Lone Star National Bank Acct. No. ****9303, made out to **QUINTANILLA**, to cash at Lone Star National Bank. | $2,000 |

All in violation of Title 18, United States Code, Section 1956(a)

## COUNTS TWENTY to FORTY-SIX
### 18 U.S.C. § 1956(a)
### (Money Laundering)

92.     Paragraphs 1 through 79 of this Indictment are re-alleged as if fully set forth herein.

93.     On or about the dates listed below, in the Southern District of Texas and elsewhere, the defendants,

### ARTURO C. CUELLAR, JR.,
### also known as "A.C."

knowing that the property involved in the financial transactions listed below represented the proceeds of some form of unlawful activity, knowingly and willfully conducted and caused to be conducted the financial transactions listed below, which were designed in whole or in part to promote, conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, bribery of a public official, and each transaction affecting interstate commerce, in that the defendants withdrew funds from the bank account at the financial institutions identified below:

| Count | Date (on or about) | Financial Transaction | Total Amount of Transaction |
|-------|--------------------|-----------------------|------------------------------|
| 20 | 4/10/2014 | Deposit of check #26819, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**. | $5,000 |
| 21 | 4/15/2014 | Deposit of check #1701, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank | $45,000 |

25

| | | Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | |
|---|---|---|---|
| 22 | 4/24/2014 | Deposit of check #26898, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 23 | 5/1/2014 | Deposit of check #1720, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | $15,000 |
| 24 | 5/7/2014 | Deposit of check #26950, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 25 | 5/20/2014 | Deposit of check #27083, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 26 | 6/4/2014 | Deposit of check #27165, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 27 | 6/10/2014 | Deposit of Check #1543, drawn on Lone Star Bank Acct. No. ****9303, made out to **ARTURO C. CUELLAR, JR.** | $15,000 |
| 28 | 6/18/2014 | Deposit of check #27243, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 29 | 7/1/2014 | Deposit of check #1554, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | $15,000 |
| 30 | 7/9/2014 | Deposit of check #27353, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |

| 31 | 7/23/2014 | Deposit of check #27427, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
|----|-----------|---|---|
| 32 | 7/29/2014 | Deposit of check #1567, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | $15,000 |
| 33 | 7/29/2014 | Deposit of check #1570, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | $5,000 |
| 34 | 8/7/2014 | Deposit of check #27521, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 35 | 8/19/2014 | Deposit of check #1643, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | $12,500 |
| 36 | 8/20/2014 | Deposit of check #27608, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 37 | 9/11/2014 | Deposit of check #27728, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 38 | 9/23/2014 | Deposit of check #27794, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 39 | 9/29/2014 | Deposit of check #1684, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | $25,000 |
| 40 | 10/6/2014 | Deposit of check #1685, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank | $30,000 |

| | | Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | |
|---|---|---|---|
| 41 | 10/8/2014 | Deposit of check #27870, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 42 | 10/20/2014 | Deposit of check #1737, drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.** | $25,000 |
| 43 | 10/22/2014 | Deposit of check #27957, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 44 | 10/31/2014 | Deposit of check #1782, drawn on Lone Star Bank Acct. No. ****9303, made out to **ARTURO C. CUELLAR, JR.** | $50,000 |
| 45 | 11/6/2014 | Deposit of check #28009, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR.** | $5,000 |
| 46 | 11/24/2014 | Deposit of check #1787, drawn on Lone Star Bank Acct. No. ****9303, made out to **ARTURO C. CUELLAR, JR.** | $4,000 |

**All in violation of Title 18, United States Code, Section 1956(a) and 2.**



## COUNTS FORTY-EIGHT to SEVENTY-FOUR
### 18 U.S.C. § 1952
### (Travel Act)

96.     Paragraphs 1 through 79 of this Indictment are re-alleged as if fully set forth herein.

97.     On or about the dates listed below, in the Southern District of Texas and elsewhere,

the defendants,

### ARTURO C. CUELLAR, JR.,
### also known as "A.C."

knowingly and willfully did use and cause to be used a facility in interstate and foreign commerce,

namely a computer network, with the intent to promote, manage, establish, carry on, and facilitate

the promotion, management, establishment, and carrying on of an unlawful activity, namely

bribery, contrary to ███████████████████████ Texas Penal Code § 36.02,

and thereafter performed and attempted to perform an act to promote, manage, establish and carry

on, and to facilitate the promotion, management, establishment and carrying on of the above

unlawful activity.

| Count | Date<br>(on or about) | Use of Interstate Facility |
|-------|-----------------------|----------------------------|
| 48 | 4/10/2014 | Deposit of check #26819, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 49 | 4/15/2014 | Deposit of check #1701, in the amount of $45,000 drawn on Lone Star Bank Acct. No. ****9303, into Lone Star Bank Acct. No. ***8372, in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 50 | 4/24/2014 | Deposit of check #26898, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 51 | 5/1/2014 | Deposit of check #1720, in the amount of $15,000 drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 52 | 5/7/2014 | Deposit of check #26950, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 53 | 5/20/2014 | Deposit of check #27083, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 54 | 6/4/2014 | Deposit of check #27165, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 55 | 6/10/2014 | Deposit of Check #1543, in the amount of $15,000 drawn on Lone Star Bank Acct. No. ****9303, made out to **ARTURO C.** |

| | | |
|---|---|---|
| | | CUELLAR, JR., causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 56 | 6/18/2014 | Deposit of check #27243, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 57 | 7/1/2014 | Deposit of check #1554, in the amount of $15,000 drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 58 | 7/9/2014 | Deposit of check #27353, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 59 | 7/23/2014 | Deposit of check #27427, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 60 | 7/29/2014 | Deposit of check #1567, in the amount of $15,000 drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 61 | 7/29/2014 | Deposit of check #1570, in the amount of $5,000 drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 62 | 8/7/2014 | Deposit of check #27521, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 63 | 8/19/2014 | Deposit of check #1643, in the amount of $12,500 drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. |

| | | |
|---|---|---|
| | | ***1213, in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 64 | 8/20/2014 | Deposit of check #27608, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 65 | 9/11/2014 | Deposit of check #27728, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 66 | 9/23/2014 | Deposit of check #27794, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 67 | 9/29/2014 | Deposit of check #1684, in the amount of $25,000 drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 68 | 10/6/2014 | Deposit of check #1685, in the amount of $30,000 drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, ] in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 69 | 10/8/2014 | Deposit of check #27870, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 70 | 10/20/2014 | Deposit of check #1737, in the amount of $25,000 drawn on Lone Star Bank Acct. No. ****9303, into Elsa State Bank Acct. No. ***1213, in the name of **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |

| 71 | 10/22/2014 | Deposit of check #27957, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 72 | 10/31/2014 | Deposit of check #1782, in the amount of $50,000 drawn on Lone Star Bank Acct. No. ****9303, made out to **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 73 | 11/6/2014 | Deposit of check #28009, in the amount of $5,000, drawn on First Victoria National Bank Acct. No. *****7700, into Inter National Bank Acct. No. **623 in the name of **JOHN F. CUELLAR**, causing the funds to be routed over a computer network, a facility in interstate commerce. |
| 74 | 11/24/2014 | Deposit of check #1787, in the amount of $4,000 drawn on Lone Star Bank Acct. No. ****9303, made out to **ARTURO C. CUELLAR, JR.**, causing the funds to be routed over a computer network, a facility in interstate commerce. |

All in violation of Title 18, United States Code, Section 1952(a)(3) and 2.



33



A TRUE BILL:

FOREPERSON OF THE GRAND JURY

RYAN K. PATRICK
United States Attorney

Roberto Lopez
Assistant United States Attorney
Southern District of Texas
Email: Roberto.Lopez2@usdoj.gov

ANNALOU TIROL
Acting Chief
Public Integrity Section

*s/ Peter M. Nothstein*
Peter M. Nothstein
Jessica C. Harvey
Trial Attorneys
Public Integrity Section, Criminal Division
Email: Peter.Nothstein@usdoj.gov
Email: Jessica.Harvey@usdoj.gov